UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| LAKESHORE ENGINEERING, | CIVIL ACTION NO. 5:12-121-KKC |
| Plaintiff, | |
| V. | OPINION & ORDER |
| RICHMOND UTILITIES BOARD, and HDR ENGINEERING, | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant HDR Engineer's motion to alter or amend (DE 28) the Court's previous Memorandum Opinion and Order (DE 27). In its prior order, this Court denied the defendant's motion to dismiss pursuant to Rule 12(b)(6), and HDR now moves the Court to reconsider this ruling under Rule 59(e) of the Federal Rules of Civil Procedure. For the following reasons, the Court will deny the defendant's motion.

The facts of this case can be briefly summarized.[1] The City of Richmond awarded Lakeshore Engineering Contracting Corp. a contract to install a sewage pipeline and submersible pump in Richmond, Kentucky. Prior to issuing its advertisement for bids, Richmond hired HDR Engineering to design the project. HDR hired Thelen Associates to perform a geotechnical analysis of the subsurface conditions, and Thelen prepared a geotechnical report. Richmond issued instructions to bidders informing them that they could rely on the data in the geotechnical report. Lakeshore was awarded the contract and completed the project.

---

[1] A full recitation of the facts may be found in the Court's original memorandum opinion and order, found at Docket Entry 27.

Lakeshore now seeks compensation above the contract price because of alleged "large quantities of unanticipated bedrock" that were not encompassed in the geotechnical report. Lakeshore brought suit against both Richmond Utilities Board and HDR Engineering for a number of claims. In its prior motion, HDR sought dismissal of Lakeshore's claim for negligent misrepresentation, which the Court denied. HDR now moves the Court to reconsider its ruling on the grounds that the Court committed three clear errors of law.

A court may alter or amend its ruling under Rule 59(e) "based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)); *Howard v. Magoffin Co. Bd. Of Educ.*, 830 F. Supp. 2d 308, 319 (E.D. Ky. 2012). However, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

According to HDR, Lakeshore's claim for negligent misrepresentation must be dismissed because (1) it is barred by the statute of limitations, (2) the complaint fails to meet the heightened pleading standards HDR contends is required for negligent-misrepresentation claims, and (3) Lakeshore released any claim against HDR it might have had. In its motion, HDR contends that this Court committed clear error of law in rejecting each of these three arguments.

**I. Statute of Limitations**

The Court will not reconsider its ruling that more facts are necessary to determine when the statute of limitations period began. In its prior order, the Court found that in viewing the facts in the complaint in the light most favorable to Lakeshore, further discovery is needed to determine when Lakeshore became aware of the subsurface

conditions that led to its alleged injury. As the Court previously wrote, "Lakeshore's complaint does not specify the time frame in which it discovered the problematic bedrock that allegedly led to excess excavation costs. The complaint merely indicates that 'as the work progressed' it became obvious that bedrock couldn't be excavated and that 'Lakeshore repeatedly advised and informed the Defendants' of these conditions.'" (DE 27, at 4). Thus it was held that "[i]f, as HDR maintains, the evidence shows that Lakeshore encountered the adverse subsurface conditions in 2009, the court will revisit this issue on summary judgment." (DE 27, at 5). HDR contends that the Court committed two errors of law in rendering this prior ruling. First, HDR argues that the Court should have converted the motion to dismiss into one for summary judgment, and second, the Court should have found that the uncontradicted evidence supports its claim that Lakeshore first discovered the problematic subsurface conditions in August 2009.

To begin, it is simply incorrect that the Court should have converted the motion to dismiss into one for summary judgment. HDR correctly states that when "the court considers matters outside the pleadings before it in a 12(b)(6) motion, the [motion] will automatically be converted into a Rule 56 summary judgment procedure." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Federal Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Moreover, courts are permitted to convert a motion to dismiss into one for summary judgment so long as the parties are not "likely to be surprised by the proceedings." *See Salephour v. Univ. of Tennessee*, 159 F.3d 199, 204 (6th Cir. 1998).

In this case, however, the Court never considered matters outside of the pleadings and therefore did not convert the motion into one for summary judgment. HDR mistakenly assumes that because it attached an affidavit to its motion to dismiss, the Court *must* have

relied on it and therefore *should* have converted the motion to one for summary judgment. But instead of relying on the affidavit HDR attached to its motion, the Court treated the motion to dismiss as exactly that, and it analyzed only whether the facts *as alleged in the complaint* state a plausible claim for relief.

This, in turn, explains why HDR's second argument for reconsideration of the Court's statute of limitations rulings is in error. HDR contends that the "undisputed facts . . . demonstrate that Lakeshore encountered adverse subsurface conditions in 2009." (DE 28-1, at 5). HDR points to two reasons as to why this fact is undisputed: First, HDR directs the Court to the affidavit it attached to the motion, which—as explained above—was not considered by this Court. In addition to the affidavit, however, HDR notes that Lakeshore acknowledged in its response memorandum that it encountered problematic subsurface conditions in September 2009 (DE 23, at 24) and that Lakeshore engaged in continued discussions with HDR about the conditions from September 2009 to February 2010 (DE 23, at 24). According to HDR, these statements by Lakeshore in its response establish as an undisputed fact that Lakeshore discovered the conditions more than one year before it filed suit in April 2012.

But Lakeshore's complaint alleges only that the reality of its economic damage became obvious "as the work progressed" and that Lakeshore "repeatedly advised and informed Defendants of the unanticipated subsurface conditions." (DE 1, ¶¶ 21–25). This point is crucial because "a 'motion under Rule 12(b)(6) is directed solely to the complaint itself,'" *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983) (quoting *Sims v. Mercy Hosp. of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971)), and the complaint in this case does not indicate a definitive point in time on which Lakeshore would be "certain that damages would flow." *ISP Chems. LLC v. Dutchland, Inc.*, 2011 WL 304584, at *6, No. 5:08-

4

CV-153 (W.D. Ky. Jan. 26, 2011) (citing *Estill Cnty. Bd. of Educ. V. Zurich Ins. Co.*, 84 Fed. App'x 516, 519 (6th Cir. 2003)). *See also Broam v. Bogan*, 320 F.3d 1023, 1026 n. 2 (9th Cir. 2003) (explaining that "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (internal quotations omitted). Without further discovery, the Court is unable to determine exactly when Lakeshore became "certain that damages would flow," and HDR's motion to alter the Court's prior ruling on this issue will be denied.

## II. Pleading Standard for Negligent Misrepresentation

With regard to the second issue presented by HDR—whether a claim for common law negligent misrepresentation requires the plaintiff to adhere to the higher pleading standard of Rule 9(b)—the Court agrees that it is appropriate to modify its prior ruling. HDR asks the Court to revisit this issue and to address the Sixth Circuit case *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239 (6th Cir. 2012). According to HDR, *Republic Bank* requires that Lakeshore plead its claim of negligent misrepresentation so as to conform to the requirements of Rule 9(b), and this Court made a clear error of law in evaluating the complaint under Rule 8.

HDR is correct in concluding that Rule 9(b) applies to state-law negligent-misrepresentation claims brought under Kentucky law. In *Republic Bank*, the plaintiff brought claims of both fraud and negligent misrepresentation. Although Rule 9(b)'s "heightened standard unquestionably applies to [the plaintiff's] fraud-and-deceit" claim, the court in *Republic Bank* noted that "[i]t is less clear whether Rule 9(b) also applies to [the plaintiff's] common-law negligent-misrepresentation claim." *Id.* at 247. This lack of clarity arises, according to the court in *Republic Bank*, because of a complex split among the federal courts of appeals on the issue. *See id.* (comparing cases). *See also* Kimball Dean

5

Parker, Comment, *A Historical Approach to Negligent Misrepresentation and Federal Rule of Civil Procedure 9(b)*, 80 U. CHI. L. REV. 1461, 1474–1480 (2013) (describing a three-way circuit split regarding the federal pleading requirements for negligent-misrepresentation claims).

Despite this lack of clarity, the court in *Republic Bank* followed the lead of prior Sixth Circuit guidance and found that "[w]hether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law, on which we must defer to the state courts." *Republic Bank*, 683 F.3d at 247. The court then went on to find that Kentucky law "holds parties pleading negligent misrepresentation to Kentucky's version of Rule 9(b)," and thus a plaintiff's negligent-misrepresentation claim "must satisfy Rule 9(b)'s heightened pleading standard to survive dismissal." *Id.* at 248. *See also Morris Aviation, LLC v. Diamond Aircraft Indus., Inc.*, 536 Fed. App'x 558, 562 (6th Cir. 2013) (noting that "negligent-misrepresentation claims under Kentucky law are subject to Rule 9(b)'s heightened pleading standards"). Thus, HDR correctly argues that this Court was in error when it previously examined the plaintiff's negligent-misrepresentation claim under the Rule 8(a) pleading standard.

Even under the more stringent Rule 9(b) standard, however, the Court finds the plaintiff's complaint sufficient. Rule 9(b) "requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank*, 683 F.3d at 247 (citing *Ind. State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009)). HDR contends that Lakeshore fails to meet this pleading requirement because it did not "allege particular facts from which one could reasonably infer that it is plausible that (1) HDR supplied false

6

information and (2) that [sic] Lakeshore justifiably relied on the alleged false information." (DE 28-1, at 8).

Lakeshore's complaint alleges detailed factual allegations that clearly meet this burden. The complaint states that the geotechnical report prepared by HDR contained specific negligent and misleading information. (DE 1, ¶ 57). It states that the defendants failed to exercise reasonable care in obtaining or communicating the geotechnical report and other information provided to Lakeshore, and provided reasons that Lakeshore justifiably relied on the defendants' misrepresentations in preparing its bid. (DE 1, ¶¶ 16–17, 58–60). The complaint further alleges that Lakeshore suffered damages due to the subsurface conditions that were materially different than the information provided by the defendants. (DE 1, ¶ 60–62). Moreover, the complaint goes into specific detail as to what made the geotechnical report deficient, such as its analysis of the bedrock quality and the report's failure to mention potential groundwater, cavities, or mudseams. (DE 1, ¶ 57). In reading the complaint as a whole, it is clear that Lakeshore's allegations are specific and particular enough to support its negligent-misrepresentation claim even under the heightened pleading standard of Rule 9(b).

### III. Validity of Third-Party Release

Finally, the Court will address its prior ruling that HDR was not released from claims against Lakeshore because Lakeshore did not have a contract with HDR. HDR argues that language contained in the contract between Lakeshore and Richmond operate to release any claim for negligent misrepresentation made against HDR. Under Kentucky law, a release is valid only if there is an agreement between the parties in which one party abandons a claim or right to sue another party. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d

99, 107 (Ky. 2003). The Court previously ruled that even if such a waiver was valid it was not applicable to HDR because HDR was not a party to that contract.

HDR directs the court to the unpublished decision in *Pennington v. Amer. Telephone & Telegraph Co.*, 202 F. App'x 880 (6th Cir. 2006), for the proposition that a general release does not require that the tortfeasor be identified by name in order to be discharged from liability by that release. In that case, the court held that an unambiguous general release in a settlement agreement purporting to release "all other persons, firms or corporations liable, or who might be claimed to be liable" included within its scope the defendant, who was an otherwise unnamed tortfeasor. *Id.* at 881, 887.

The facts of *Pennington* are dramatically different than the case before this Court. In the instant case, the provision of the contract[2] that HDR claims operates as a release states:

> Contractor may rely upon the general accuracy of the "technical data" contained in such reports and drawings, but such reports and drawings are not Contract Documents. Such "technical data" is identified in the Supplementary Conditions. *Except for such reliance on such "technical data,"* Contractor may not rely upon or make any claim against Owner or Engineer, or any of their Related Entities with respect to:
>
> 1. the completeness of such reports and drawings for Contractor's purposes, including, but not limited to, any aspects of the means, methods, techniques, sequences, and procedures of construction to be employed by Contractor, and safety precautions and programs incident thereto; or

---

[2] Portions of this contract at issue have been incorporated by reference, but this section of the contract is not specifically discussed in the complaint. It remains appropriate, however, for the Court to consider it in this context. The contract between Lakeshore and Richmond is an integral part of the complaint and portions of it and the Standard General Conditions are cited to and quoted at length therein. In ruling on a motion to dismiss, the court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein[.]" *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (internal citations omitted).

> 2. other data, interpretations, opinions, and information contained in such reports or shown or indicated in such drawings; or
>
> 3. any Contractor interpretation of or conclusions drawn from any "technical data" or any such other data, interpretations, opinions, or information.

(DE 6-4, Section 4.02) (emphasis added). Unlike *Pennington*, the release in this case is narrowly tailored to specific aspects of the geotechnical report provided by Thelen to HDR and ultimately to the bidders such as Lakeshore. This is not a general release of liability to any party not otherwise named in the contract, which can operate in some cases to relieve other non-party defendants of liability.

But even if this were a general release that relieved a non-party such as HDR from liability, Lakeshore contends that the release is inapplicable because its claim is based on the "technical data" specifically excepted from the contractual provision. Without reviewing the details of the geotechnical report along with other information that might be provided during discovery, the Court cannot determine whether the above-cited release will ultimately bar Lakeshore's claims against HDR—nor will it attempt to do so on a motion to dismiss. Thus, in construing the facts alleged in the complaint in a light most favorable to the plaintiff, as it must do on a motion to dismiss, the Court finds that the release HDR points to does not bar Lakeshore from moving forward with its negligent-misrepresentation claim. To the extent that HDR subsequently finds that the evidence obtained during discovery supports its proposed interpretation of the contract, it may reassert this argument in a motion for summary judgment.

* * *

For all of these reasons, the Court finds that any errors in its prior memorandum opinion and order do not require alteration of its ruling that Lakeshore's complaint states a

valid cause of action against HDR for negligent misrepresentation. Accordingly, **IT IS ORDERED** that HDR's motion to alter or amend under Rule 59(e) (DE 28) is **DENIED**.

Dated this 17th day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY